UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONALD and CATHERINE BREEN, )
)                    FILED: JUNE 19, 2008
           Plaintiffs, )               08CV3525
)                    JUDGE MANNING
      v.                 )    No.      MAGISTRATE JUDGE KEYS
)
SIRVA RELOCATION, LLC., and  )       (Jury Demanded)
MARK WYCKOFF,            )               TC
)
           Defendants. )

## COMPLAINT

Plaintiffs, Donald and Catherine Breen, by their attorneys, Michael W. Duffy, Edward

Eshoo, Jr., and Christina M. Phillips of Childress Duffy Goldblatt, Ltd., for their Complaint

against Defendants, Sirva Relocation, LLC and Mark Wyckoff, state as follows:

## PARTIES

1.      At all times material herein, Plaintiffs, Donald and Catherine Breen, are citizens

of the State of Illinois and are the owners of the multi-unit residential dwelling located at 2336

N. Greenview Avenue in Chicago, Illinois (hereinafter referred to as "the Building", "the

Premises", "the Home", or "the Property").

2.      At all times material herein, Defendant, Sirva Relocation, LLC ("Sirva"), was and

is a foreign limited liability company formed in the State of Delaware, with its principal place of

business in 6060 Parkland Boulevard, Mayfield Heights, Ohio, and engaged in the business of

providing relocation, home sales assistance and moving solutions to consumers.

3.      At all times material herein, Defendant, Mark Wyckoff ("Wyckoff"), was and is a citizen of the State of Ohio, and upon information and belief resides in Powell, Delaware County, Ohio.

## JURISDICTION

4.      This Court has subject matter jurisdiction over this matter pursuant to Title 28, U.S.C. § 1332 because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.00.

## VENUE

5.      Venue is proper in this Court pursuant to Title 28, U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to this action occurred in this judicial district.  In addition, the property that is subject of this action is situated in this judicial district.

## FACTUAL BACKGROUND

6.      Prior to July 5, 2005, based upon information and belief, Wyckoff was the owner of the Property.

7.      On or about July 5, 2005, Wyckoff conveyed the Property by warranty deed to Sirva.

8.      On or about November 3, 2005, Plaintiffs offered to purchase the Property from Sirva, by signing a Multi-Board Residential Real Estate Contract (hereinafter referred to as "the Agreement").  On or about November 28, 2005, the Agreement was accepted by Sirva.  (A copy of the Agreement is attached hereto and made part hereof as Exhibit A).

9.      On or about November 28, 2005, a Rider to Purchase Agreement was executed by and between the parties.  (A copy of the Rider to Purchase Agreement is attached hereto and made part hereof as Exhibit B).

10.     In addition to and annexed to the Agreement was an Illinois Association of Realtors Residential Real Estate Disclosure Report and Sirva Seller's Disclosure Statement.  (A copy of the disclosures are attached hereto and made part hereof as Exhibit C).  According to the express terms of the Agreement, the disclosure statements were made part of the Agreement.

11.     Sirva, through Wyckoff, disclosed that "in approximately 1993, there was a flood/sewer back-up into the house…that a flood control system had been installed…[and] no similar events since that 1993 (approx) incident."

12.     Sirva, through Wyckoff, disclosed that: (1) it/he was unaware of flooding or recurring leakage problems in the crawlspace or basement; (2) it/he was unaware of leaks or material defects in the roof, ceilings or chimney; and (3) it/he was unaware of material defects in the walls or floor.

13.     Plaintiffs relied upon the representations made in the disclosure statements by Sirva and Wyckoff when purchasing the Premises.

14.     On December 22, 2005, the closing on the property took place, whereby Plaintiffs were given title to the property in exchange for payment in the amount of $865,000.

15.     On or about April 25, 2007, Plaintiffs, after taking possession of the Property, began to experience water leaks in the lower level of the Premises.

16.     On or about May 15, 2007, upon subsequent inspection, Plaintiffs became aware of continuous and pervasive water-infiltration into the Home.   Specifically, Plaintiffs became aware of actions and conditions which were concealed and/or not disclosed prior to the purchase of the Premises, which included, but are not limited to: (1) water leakage in the lower level concealed by placing plastic bags, containers, etc. in the ceiling of the basement; (2) undisclosed water leakage below the roof decks; (3) water infiltration through the rear sliding door and

windows; (4) prior patching of the roof's rubber membrane; (5) water leakage at the sliding door in the crows nest which was concealed by urethane foam around the sliding door frame; and (6) deterioration of structural and building components.

## COUNT I
### (Fraudulent Misrepresentation)

1-16.    Plaintiffs reallege paragraphs 1 through 16 of the Complaint as paragraphs 1-16 of Count I of the Complaint.

17.    Sirva and/or Wyckoff made false statements about material facts that they knew or believed to be false with the intent to induce Plaintiffs to purchase the property when they concealed and/or failed to disclose the continuous and pervasive water-infiltration into the Home, as well as, (1) concealing water leakage in the basement by placing plastic bags, containers, etc. in the ceiling of the basement; (2) undisclosed water leakage below the roof decks; (3) undisclosed water infiltration through the rear sliding door and windows; (4) undisclosed prior patching of the roof's rubber membrane; (5)  water leakage at the sliding door in the crows nest which was concealed by urethane foam around the sliding door frame; and (6) undisclosed deterioration of structural and building components.

18.    If not for the intentional omissions and concealments by Sirva and/or Wyckoff in the disclosure statements, Plaintiffs would not have purchased the Property.

19.    As a direct, proximate, reasonably probable and foreseeable consequence of Sirva and/or Wyckoff's misrepresentations by omission and concealment, Plaintiffs have suffered loss and damage to the Property, have suffered and will continue to suffer financial distress due to such loss and damage, and have suffered and will continue to suffer loss of use of the Property. Specifically, Plaintiff's have incurred, and will in the future incur, substantial monetary damages which include, but are not limited to, the following:

(a)    expenses to evaluate, correct, and reconstruct the defects, deficiencies, and failures existing within and adversely affecting the Property;

(b)    loss of use, loss of rental income, relocation expenses and other additional living expenses necessitated by the existence of and the conditions created by the defects, deficiencies, and failures existing within and adversely affecting the Property;

(c)    loss of use, loss of rental income, and relocation expenses necessitated by the evaluation, correction, replacement and reconstruction of the defects, deficiencies, and failures existing within and adversely affecting the Property; and

(d)     pain, suffering, mental and emotional anguish, extreme inconvenience, trauma, stress, hardship and profound disruption of their daily routine.

20.    Plaintiffs hereby demands trial by jury.

WHEREFORE, Plaintiffs, Donald and Catherine Breen, respectfully request that this Court enter judgment in their favor and against Defendants, Sirva Relocation, LLC and Mark Wyckoff, for damages in an amount to be proven at trial, which amount exceeds $75,000.00, and for costs and other such relief this Court deems just and proper.

Respectfully submitted,

**DONALD and CATHERINE BREEN**


s/Michael W. Duffy
By: _____
One of the Attorneys for Plaintiffs

Michael W. Duffy (6180182)
Edward Eshoo, Jr. (6190179)
Christina M. Phillips (6287091)
Childress Duffy Goldblatt, Ltd
515 North State Street
Suite 2200
Chicago, Illinois 60610
(312) 494-0200

JUDGE MANNING

MAGISTRATE JUDGE KEYS

TC

# MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 3.0

1. **THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties".

Buyer(s) DONALD J + CATHERINE J. GREEN Seller(s) OWNER OF RECORD
(Please Print)                               (Please Print)

2. **THE REAL ESTATE:** Real Estate shall be defined to include the Real Estate and all improvements thereon. Seller agrees to convey to Buyer or to Buyer's designated grantee the Real Estate with the approximate lot size or acreage of commonly known as: 3310 N. GREENVIEW CHICAGO IL 60614
Address                               City          State    Zip

Cook        Unit # (if applicable) ___ Permanent Index Number(s) of Real Estate 1433101025
County                                                   

Condo/Coop/Townhome Parking Space Included: (check type) ___ deeded space; ___ limited common element; assigned; Parking Space # ___ (insert number)

3. **FIXTURES AND PERSONAL PROPERTY:** All of the fixtures and personal property stated herein are owned by Seller and to Seller's knowledge are in operating condition on the Date of Acceptance, unless otherwise stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing and well systems together with the following items of personal property by Bill of Sale at Closing: [Check or enumerate applicable items]

| | | |
|---|---|---|
| X Refrigerator (1) | X All Tacked Down Carpeting | X Fireplace Screen(s)/Door(s)/Grate(s) | X Central Air Conditioning |
| X Oven/Range/Stove (1) | X All Window Treatments & Hardware | X Fireplace Gas Logs | ___ Electronic or Media Air Filter |
| X Microwave (1) | X Built-in or Attached Shelving | ___ Existing Storms & Screens | ___ Central Humidifier |
| X Dishwasher (1) | X Smoke Detector(s) | X Security System (owned) | ___ Sump Pump(s) |
| X Garbage Disposal (2) | X Ceiling Fan(s) (All) | ___ Intercom System | ___ Water Softener (owned) |
| ___ Trash Compactor | ___ TV Antenna System | ___ Central Vac & Equipment | ___ Outdoor Shed |
| X Washer | ___ Window Air Conditioner(s) | X Electronic Garage Door Opener(s) | ___ Attached Gas Grill |
| X Dryer | X All Planted Vegetation | with (All) Transmitter(s) | X Light Fixtures, as they exist |
| ___ Satellite Dish and System | | ___ Invisible Fence System, Collar(s) and Box | ___ Home Warranty $ ___ |

Other items included: ___

Items NOT included: ___

Seller warrants to Buyer that all fixtures, systems and personal property included in this Contract shall be in operating condition at the time of possession, except: ___

A system or item shall be deemed to be in operating condition if it performs the function for which it is intended, regardless of age, and does not constitute a threat to health or safety.

4. **PURCHASE PRICE:** Purchase Price of $ 865,000 shall be paid as follows: Initial earnest money of $ 10,000 by (X) (check), ( ) (cash), or ( ) (note due on ___ ) to be increased to a total of $ 50,000 within ___ days of the ___. The earnest money and the original of this Contract shall be held by the Listing Company, as "Escrowee", in trust for the mutual benefit of the Parties. The balance of the Purchase Price, as adjusted by prorations, shall be paid at Closing by wire transfer of funds, or by certified, cashier's, mortgage lender's or title company's check (provided that the title company's check is guaranteed by a licensed title insurance company).

5. **MORTGAGE CONTINGENCY:** This Contract is contingent upon Buyer obtaining an unconditional written mortgage commitment (except for matters of title and survey or matters totally within Buyer's control) on or before ___ 30-06-16 2005 for a ___ 80% L.T.V. (type) loan of $ ___ or such lesser amount as Buyer elects to take, plus private mortgage insurance (PMI), if required. The interest rate (initial rate, if applicable) shall not exceed ___ 7 ___ % per annum, amortized over not less than 30 years. Buyer shall pay loan origination fee and/or discount points not to exceed ___ 0 ___ % of the loan amount. Seller shall pay loan origination fee and/or discount points not to exceed ___ 0 ___ % of the loan amount. Those fees/points committed to by Buyer shall be applied first. Buyer shall pay the cost of application, usual and customary processing fees and Closing costs charged by lender. (If FHA/VA, refer to Paragraph #36 for additional provisions.) Buyer shall make written loan application within five (5) business days after the Date of Acceptance. Failure to do so shall constitute an act of default under this Contract. If Buyer, having applied for the loan specified above, is unable to obtain a loan commitment and serves written notice to Seller within the time specified, this Contract shall be null and void and earnest money refunded to Buyer upon written direction of the Parties to Escrowee. If written notice is not served within the time specified, Buyer shall be deemed to have waived this contingency and this Contract shall remain in full force and effect. Unless otherwise provided herein, this Contract shall not be contingent upon the sale and/or closing of Buyer's existing real estate. A condition in the mortgage commitment requiring sale and/or closing of existing real estate shall not render the mortgage commitment conditional for the purpose of this paragraph. If Seller at Seller's option and expense, within thirty (30) days after Buyer's notice, procures for Buyer such commitment or notifies Buyer that Seller

Buyer Initial R.J.B.V     Buyer Initial ___     Seller Initial SJRNA/mb     Seller Initial ___
Address 3310 N. GREENVIEW, CHICAGO IL 60614

Page 1 of 8

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035, (800) 383-9805 www.zipform.com

57  will accept a purchase money mortgage upon the same terms, this Contract shall remain in full force and effect.
58  In such event, Seller shall notify Buyer within five (5) business days after Buyer's notice of Seller's election to
59  provide or obtain such financing, and Buyer shall furnish to Seller or lender all requested information and shall
60  sign all papers necessary to obtain the mortgage commitment and to close the loan. ~~SINVA~~  ~~MB 2605~~
61  **6. CLOSING:** Closing or escrow payout shall be on __Dec. 19__, or at such time as
62  mutually agreed upon by the Parties in writing. Closing shall take place at the title company escrow office situated
63  geographically nearest the Real Estate, or as shall be agreed mutually by the Parties.
64  **7. POSSESSION:** Possession shall be deemed to have been delivered when Seller has vacated Real Estate and delivered
65  keys to Real Estate to Buyer or to Listing Office. Seller shall deliver possession to Buyer at the time of Closing.
66  **8. RESIDENTIAL REAL ESTATE AND/LEAD-BASED PAINT DISCLOSURES:** If applicable, prior to signing
67  this Contract, Buyer [check one] ☐ has ☑ has not received a completed Illinois Residential Real Property Disclosure
68  Report; [check one] ☐ has ☑ has not received the EPA Pamphlet, "Protect Your Family From Lead in Your Home";
69  [check one] ☐ has ☑ has not received a Lead-Based Paint Disclosure.
70  **9. PRORATIONS:** Proratable items shall include, without limitation, rents and deposits (if any) from tenants, utilities,
71  water and sewer, and homeowner or condominium association fees. Seller represents that as of the Date of Acceptance
72  Homeowner Association/Condominium fees are $_____ per _____ . Seller agrees to pay prior to or
73  at Closing any special assessments (governmental or association) confirmed prior to Date of Acceptance. The general
74  Real Estate taxes shall be prorated as of the date of Closing based on __110__ % of the most recent ascertainable full
75  year tax bill. All prorations shall be final as of Closing, except as provided in paragraph 17. If the amount of the most
76  recent ascertainable tax bill reflects a homeowner, senior citizen or other exemption, Seller has submitted or will submit
77  in a timely manner all necessary documentation to the Assessor's Office, before or after Closing, to preserve said
78  exemption(s). Accumulated reserves of a Homeowner/Condominium Association are not a proratable item.
79  **10. OTHER PROVISIONS:** This Contract is also subject to those OPTIONAL PROVISIONS selected for use and
80  initialed by the Parties which are contained on the succeeding pages and the following attachments, if any:
    $3500.= Bonus to be paid to Seller office (ReMax City)
81  **11. PROFESSIONAL INSPECTIONS:** Buyer may secure at Buyer's expense (unless otherwise provided by
82  governmental regulations) a home, radon, environmental, lead-based paint and/or lead-based paint hazards (unless
83  separately waived), and/or wood insect infestation inspection(s) of said Real Estate by one or more licensed or certified
84  inspection service(s). Buyer shall serve written notice upon Seller or Seller's attorney of any defects disclosed by the
85  inspection(s) which are unacceptable to Buyer, together with a copy of the pertinent page(s) of the report(s) within five
86  (5) business days (ten (10) calendar days for a lead-based paint and/or lead-based paint hazard inspection) after Date of
87  Acceptance. If written notice is not served within the time specified, this provision shall be deemed waived by the
88  Parties and this Contract shall remain in full force and effect. If within ten (10) business days after Date of
89  Acceptance, written agreement cannot be reached by the Parties with respect to resolution of inspection issues, then
90  either Party may terminate this Contract by written notice to the other Party and this Contract shall be null and void
91  and earnest money refunded to Buyer upon written direction of the Parties to Escrowee. The home inspection shall
92  cover only major components of the Real Estate, including but not limited to, central heating system(s), central cooling
93  system(s), plumbing and well system, electrical system, roof, walls, windows, ceilings, floors, appliances and
94  foundation. A major component shall be deemed to be in operating condition if it performs the function for which it is
95  intended, regardless of age, and does not constitute a threat to health or safety. Buyer shall indemnify Seller and hold
96  Seller harmless from and against any loss or damage caused by the acts or negligence of Buyer or any person performing
97  any inspection(s). Buyer agrees minor repairs and routine maintenance items are not a part of this contingency.
98  **12. ATTORNEY REVIEW:** The respective attorneys for the Parties may approve, disapprove, or make modifications
99  to this Contract, other than stated Purchase Price, within five (5) business days after the Date of Acceptance.
100 Disapproval or modification of this Contract shall not be based solely upon stated Purchase Price. Any notice of
101 disapproval or proposed modification(s) by any Party shall be in writing. If within ten (10) business days after Date of
102 Acceptance written agreement on proposed modification(s) cannot be reached by the Parties, this Contract shall be
103 null and void and earnest money refunded to Buyer upon written direction of the Parties to Escrowee. If written
104 notice is not served within the time specified, this provision shall be deemed waived by the Parties and this
105 Contract shall remain in full force and effect.
106 **13. PLAT OF SURVEY:** Not less than one (1) business day prior to Closing, except where the subject property is a
107 condominium (see Paragraph 27) Seller shall, at Seller's expense, furnish to Buyer or his attorney a Plat of Survey dated
108 not more than six (6) months prior to the date of Closing, prepared by an Illinois Professional Land Surveyor, showing

Buyer Initial __PB__    Buyer Initial _____    Seller Initial __SIPVA__ / __mb__ Seller Initial
Address __2336 N. Greenview, Chicago, IL  60614__

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035, (800) 383-9805  www.zipform.com

by encroachments, measurements of all lot lines, all easements of record, building set back lines of record, fences, all
112 buildings and other improvements on the Real Estate and distances therefrom to the nearest two lot lines. In addition, the
survey to be provided shall be a boundary survey conforming to the current requirements of the Illinois Department of
113 Professional Regulation. The survey shall show all corners staked and flagged or otherwise monumented. The survey
114 shall have the following statement prominently appearing near the professional land surveyor seal and signature: "This
115 professional service conforms to the current Illinois minimum standards for a boundary survey." A Mortgage Inspection,
116 as defined, is not a boundary survey, and does not satisfy the necessary requirements.

117 **14. NOTICE:** All notices required shall be in writing and shall be served by one Party or his attorney to the other Party
118 or his attorney. Notice to any one of a multiple person Party shall be sufficient notice to all. Notice shall be given in the
119 following manner:

120     (a)  By personal delivery of such notice; or
121     (b)  By mailing of such notice to the addresses recited herein by regular mail and by certified mail, return receipt
122         requested. Except as otherwise provided herein, notice served by certified mail shall be effective on the date of
123         mailing; or
124     (c)  By sending facsimile transmission. Notice shall be effective as of date and time of facsimile transmission,
125         provided that the notice transmitted shall be sent on business days during business hours (8:00 A.M. to 6:00
126         P.M. Chicago time). In the event fax notice is transmitted during non-business hours. the effective date and time
127         of notice is the first hour of the first business day after transmission; or
128     (d)  By sending e-mail transmission. Notice shall be effective as of date and time of e-mail transmission, provided
129         that the notice transmitted shall be sent on business days during business hours (8:00 A.M. to 6:00 P.M. Chicago
130         Time), and provided further that the recipient provides written acknowledgment to the sender of receipt of the
131         transmission (by e-mail, facsimile, or by regular mail). In the event e-mail notice is transmitted during non-
132         business hours, the effective date and time of notice is the first hour of the first business day after transmission.

133 **15. THE DEED:** Seller shall convey or cause to be conveyed to Buyer or Buyer's designated grantee good and
134 merchantable title to the Real Estate by recordable general Warranty Deed, with release of homestead rights, (or
135 appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by Seller (unless
136 otherwise designated by local ordinance). Title when conveyed will be good and merchantable, subject only to: general
real estate taxes not due and payable at the time of Closing, covenants, conditions, and restrictions of record, building
139 lines and easements, if any, so long as they do not interfere with the current use and enjoyment of the Real Estate.

139 **16. TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
140 customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a title
141 commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended coverage by a title
142 company licensed to operate in the State of Illinois, issued on or subsequent to the Date of Acceptance of this Contract,
143 subject only to items listed in Paragraph 15. The requirement of providing extended coverage shall not apply if the Real
144 Estate is vacant land. The commitment for title insurance furnished by Seller will be conclusive evidence of good and
145 merchantable title as therein shown, subject only to the exceptions therein stated. If the title commitment discloses
146 unpermitted exceptions, or if the Plat of Survey shows any encroachments which are not acceptable to Buyer, then Seller
147 shall have said exceptions or encroachments removed, or have the title insurer commit to insure against loss or damage
148 that may be caused by such exceptions or encroachments. If Seller fails to have unpermitted exceptions waived or title
149 insured over prior to Closing, Buyer may elect to take the title as it then is, with the right to deduct from the Purchase
150 Price prior encumbrances of a definite or ascertainable amount. Seller shall furnish Buyer at Closing an Affidavit of
151 Title covering the date of Closing, and shall sign any other customary forms required for issuance of an ALTA Insurance
152 Policy.

153 **17. REAL ESTATE PROPERTY TAX ESCROW:** In the event the Real Estate is improved, but has not been
154 previously taxed for the entire year as currently improved, the sum of three (3) percent of the Purchase Price shall be
155 deposited in escrow with the title company with the cost of the escrow to be divided equally by Buyer and Seller and
156 paid at Closing. When the exact amount of the taxes prorated under this Contract can be ascertained, the taxes shall be
157 prorated by the Seller's attorney at the request of either Party, and the Seller's share of such tax liability after reproration
158 shall be paid to the Buyer from the escrow funds and the balance, if any, shall be paid to the Seller. If the Seller's
159 obligation after such reproration exceeds the amount of the escrow funds, Seller agrees to pay such excess promptly
160 upon demand.

161 **18. PERFORMANCE:** Time is of the essence of this Contract. In the event of default by Seller or Buyer, the Parties
162 are free to pursue any legal remedies at law or in equity. The prevailing Party in litigation shall be entitled to collect

_Buyer Initial_   E1B      _Buyer Initial_      _Seller Initial_ SJRVA | mb _Seller Initial_

_Address_   2336 N. GREENVIEW CHICAGO, IL 60614

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035, (800) 383-9805 www.zipform.com

reasonable attorney fees and costs from the losing Party as ordered by a court of competent jurisdiction. There shall be no disbursement of earnest money unless Escrowee has been provided written agreement from Seller and Buyer. Absent an agreement relative to the disbursement of earnest money within a reasonable period of time, Escrowee may deposit funds with the Clerk of the Circuit Court by the filing of an action in the nature of interpleader. Escrowee shall be reimbursed from the earnest money for all costs, including reasonable attorney fees, related to the filing of the interpleader action. Seller and Buyer shall indemnify and hold Escrowee harmless from any and all conflicting claims and demands arising under this paragraph.

**19. DAMAGE TO REAL ESTATE PRIOR TO CLOSING:** If, prior to delivery of the deed, the Real Estate shall be destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by condemnation, then Buyer shall have the option of terminating this Contract and receiving a refund of earnest money or of accepting the Real Estate as damaged or destroyed, together with the proceeds of any insurance payable as a result of the destruction or damage, which proceeds Seller agrees to assign to Buyer. Seller shall not be obligated to repair or replace damaged improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Contract, except as modified in this paragraph.

**20. SELLER REPRESENTATIONS:** Seller represents that he/she has not received written notice from any Governmental body or Homeowner Association of (a) zoning, building, fire or health code violations that have not been corrected; (b) any pending rezoning; or (c) a proposed or confirmed special assessment and/or special service area affecting the Real Estate. Seller further represents that Seller has no knowledge of boundary line disputes, easements or claims of easement not shown by the public records, any hazardous waste on the Real Estate or any improvements for which the required permits were not obtained. Seller represents that there have been no improvements to the Real Estate which are not included in full in the determination of the most recent real estate tax assessment, or which are eligible for home improvement tax exemption.

**21. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean condition. All refuse and personal property that is not to be conveyed to Buyer shall be removed from the Real Estate at Seller's expense before possession. Buyer shall have the right to inspect the Real Estate, fixtures and personal property prior to possession to verify that the Real Estate, improvements and included personal property are in substantially the same condition as of the Date of Acceptance of this Contract, normal wear and tear excepted.

**22. GOVERNMENTAL COMPLIANCE:** Parties agree to comply with the reporting requirements of the applicable sections of the Internal Revenue Code and the Real Estate Settlement Procedures Act of 1974, as amended.

**23. ESCROW CLOSING:** At the election of either Party, not less than five (5) business days prior to the Closing, this sale shall be closed through an escrow with the lending institution or the title company in accordance with the provisions of the usual form of Deed and Money Escrow Agreement, as agreed upon between the Parties, with provisions inserted in the Escrow Agreement as may be required to conform with this Contract. The cost of the escrow shall be paid by the Party requesting the escrow.

**24. FLOOD INSURANCE:** Buyer shall obtain flood insurance if required by Buyer's lender.

**25. FACSIMILE:** Facsimile signatures shall be sufficient for purposes of executing, negotiating, and finalizing this Contract.

**26. BUSINESS DAYS:** Business days are defined as Monday through Friday, excluding Federal holidays.

**27. CONDOMINIUMS:** (If applicable) The Parties agree that the terms contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any conflicting terms.

    (a) Title when conveyed shall be good and merchantable, subject to terms, provisions, covenants and conditions of the Declaration of Condominium and all amendments; public and utility easements including any easements established by or implied from the Declaration of Condominium or amendments thereto; party wall rights and agreements; limitations and conditions imposed by the Condominium Property Act; installments due after the date of Closing of general assessments established pursuant to the Declaration of Condominium.

    (b) Seller shall be responsible for all regular assessments due and levied prior to Closing and for all special assessments confirmed prior to the Date of Acceptance.

    (c) Buyer has, within five (5) business days from the Date of Acceptance of this Contract, the right to demand from Seller items as stipulated by the Illinois Condominium Property Act. The Contract is subject to the condition that Seller be able to procure and provide to Buyer, a release or waiver of any option of first refusal or other pre-emptive rights of purchase created by the Declaration of Condominium within the time established by the Declaration. In the event the Condominium Association requires personal appearance of Buyer and/or additional documentation, Buyer agrees to comply with same.

_Buyer Initial_     _Buyer Initial_     _Seller Initial_ SIRVA/mb _Seller Initial_

_Address_ 2337 N. GREENVIEW, CHGO, IL 60614

Page 4 of 8

218   (d) In the event the documents and information provided by the Seller to the Buyer disclose that the existing
219        improvements are in violation of existing rules, regulations or other restrictions or that the terms and conditions
220        contained within the documents would unreasonably restrict Buyer's use of the premises or would increase the
221        financial considerations which Buyer would have to extend in connection with the owning of the condominium,
222        then Buyer may declare this Contract null and void by giving Seller written notice within five (5) business days
223        after the receipt of the documents and information required by Paragraph 27 (c), listing those deficiencies which
224        are unacceptable to Buyer, and thereupon all earnest money deposited by Buyer shall be returned to Buyer upon
225        written direction of Parties to escrowee. If written notice is not served within the time specified, Buyer shall
        be deemed to have waived this contingency, and this Contract shall remain in full force and effect.

226   (e) Seller shall not be obligated to provide a condominium survey.

227   (f) Seller shall provide a certificate of insurance showing Buyer (and Buyer's mortgagee) as insured.

**28. CHOICE OF LAW/GOOD FAITH:** All terms and provisions of this Contract including, but not limited to, the
228 Attorney Review and Professional Inspection paragraphs, shall be governed by the laws of the State of Illinois and are
229 subject to the covenant of good faith and fair dealing implied in all Illinois contracts.

230
231 **THE FOLLOWING OPTIONAL PROVISIONS APPLY ONLY IF INITIALED BY ALL PARTIES**
232
233 ☐ ☐ ☐   **29. SALE OF BUYER'S REAL ESTATE:**
234 [initials]
235   (A) **REPRESENTATIONS ABOUT BUYER'S REAL ESTATE:** Buyer represents to Seller as follows:
236     (1) Buyer owns real estate commonly known as (address): _____
237     (2) Buyer [check one]   ☐ has ☐ has not entered into a contract to sell his real estate. If Buyer has entered into a Contract to sell
238         his real estate:
239         (a) Buyer's sale contract [check one] ☐ is ☐ is not subject to a mortgage contingency.
240         (b) Buyer's sale contract [check one] ☐ is ☐ is not subject to a real estate sale contingency.
241         (c) Buyer's sale contract [check one] ☐ is ☐ is not subject to a real estate closing contingency.
242     (3) Buyer [check one]   ☐ has ☐ has not listed his real estate for sale with a licensed real estate broker and in a local multiple
243         listing service.
    (4) If Buyer's real estate is not listed for sale with a licensed real estate broker and in a local multiple listing service,
        Buyer [check one]
246         (a) ☐ Shall list his real estate for sale with a licensed real estate broker who will place it in a local multiple
247           listing service within five (5) business days after the Date of Acceptance of this Contract.
248           For information only: Broker: _____
249           Broker's Address: _____ Phone: _____
250         (b) ☐ Does not intend to list his real estate for sale.
251     (5) Buyer authorizes Seller or his agent to verify representations contained in Paragraph 29 at any time, and Buyer agrees to
252         cooperate in providing relevant information.
253   (B) **CONTINGENCIES BASED UPON SALE AND/OR CLOSE OF BUYER'S REAL ESTATE:**
254     (1) This Contract is contingent upon Buyer having a contract for the sale of Buyer's real estate in full force and effect as of
255         _____. Such Contract shall provide for a Closing date not later than the Closing date set forth in
256         this Contract. If written notice of failure to procure such contract is not served within the time specified, Buyer shall
257         be deemed to have waived this contingency and this Contract shall remain in full force and effect. (If this paragraph
258         is used, then the following paragraph must be completed.)
259     (2) In the event the Buyer has procured a contract for the sale of Buyer's real estate as set forth in Paragraph 29 (B) (1) and that
260         contract is in full force and effect or has entered into a contract for sale of Buyer's real estate prior to the execution of this
261         Contract, this Contract is contingent upon Buyer Closing the sale of Buyer's real estate on or before
262         _____. If written notice is not served within the time specified, Buyer shall be
263         deemed to have waived all contingencies contained in this Paragraph 29, and this Contract shall remain in full force
264         and effect.
265     (3) If the Contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in Paragraph 29 (B) (1)
266         (or after the date of this Contract if no date is set forth in Paragraph 29 (B) (1)), Buyer shall, within three (3) business days
267         of such termination, notify Seller of said termination. Unless Buyer, as part of said notice, waives all contingencies in
268         Paragraph 29 and complies with Paragraph 29 (D), this Contract shall be null and void as of the date of notice and earnest
269         money refunded to Buyer upon written direction of the Parties to Escrowee. If written notice as required by this
270         subparagraph is not served within the time specified, Buyer shall be in default under the terms of this Contract.
271   (C) **SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE:** During the time of this contingency Seller
272     has the right to continue to show the Real Estate and offer it for sale subject to the following:

_____    _____    SIRVA/ml    _____
Buyer Initial       Buyer Initial       Seller Initial       Seller Initial

Address   **2336 N. GREENVIEW CHGO. IL 60614**

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035, (800) 383-9805 www.zipform.com

273  (1) If Seller accepts another bona fide offer to purchase the Real Estate during such period, Seller shall notify Buyer in writing
274  of same. Buyer shall then have _____ hours after Seller gives such notice to waive the contingencies set forth in
275  Paragraph 29 (B), subject to Paragraph 29 (D).
276  (2) If Buyer complies with the provisions of Paragraph 29 (D) then this Contract shall remain in full force and effect.
277  (3) If the contingencies set forth in Paragraph 29 (B) are NOT waived in writing within said time period by Buyer, this
278  Contract shall be null and void and earnest money refunded to Buyer upon written direction of the Parties to
279  Escrowee.

280  (D) WAIVER OF PARAGRAPH 29 CONTINGENCIES: Buyer shall be deemed to have waived the contingencies in Paragraph
281  29 (B) when Buyer has delivered written waiver and deposited with the Escrowee the additional sum of $
282  earnest money within the time specified. If Buyer fails to deposit the additional earnest money within the time specified the
283  waiver shall be deemed ineffective and this Contract shall be null and void and earnest money refunded to Buyer upon
284  written direction of the Parties to Escrowee.

285  (E) NOTICE (FOR THIS CONTINGENCY ONLY): Except as otherwise provided above, notice required under this Paragraph
286  29 shall be in writing and shall be served on the Party. Courtesy copies of notice should be sent to the respective attorneys and real
287  estate agents, if known. Failure to provide such courtesy copies shall not render notice invalid. Notice to any one of a multiple
288  person Party shall be sufficient notice to all. Notice shall be given to the Party in the following manner:
289  (1) By personal delivery of such notice effective at the time and date of personal delivery; or
290  (2) By mailing of such notice to the addresses recited herein by regular mail and by certified mail. Notice served by regular
291  mail and certified mail shall be effective as of 10:00 A.M. on the morning of the second day following deposit of notice in the
292  U.S. Mail; or
293  (3) By facsimile to a Party (service shall be effective at the time and date the sending Party receives a receipted copy of the
294  notice from the receiving Party).

295
296  ☐☐☐☐  30. CANCELLATION OF PRIOR REAL ESTATE CONTRACT: In the event either Party has entered into a prior
297  real estate Contract this Contract shall be subject to written cancellation of the prior Contract on or before _____,
298  _____. In the event the prior Contract is not cancelled within the time specified, this Contract shall be null and void and earnest
299  money refunded to Buyer upon written direction of the Parties to Escrowee. Notice to the purchaser under the prior Contract
300  should not be served until after Attorney Review and Professional Inspections provisions of this Contract have expired, been
301  satisfied or waived.

302
303  ☐☐☐☐  31. INTEREST BEARING ACCOUNT: Earnest money (with a completed W-9 and other required forms), shall be
304  held in a federally insured interest bearing account at a financial institution designated by Escrowee. All interest earned on the
305  earnest money shall accrue to the benefit of and be paid to Buyer. The Buyer shall be responsible for any administrative fee (not
306  to exceed $75) charged for setting up the account. In anticipation of Closing, the Parties direct Escrowee to close the account no
307  sooner than ten (10) business days prior to the anticipated Closing date.

308
309  ☐☐☐☐  32. POST-CLOSING POSSESSION: In the event possession is not to be delivered at Closing, the Parties shall enter
310  into a post Closing possession agreement that shall provide, among other things, that possession will be delivered no later than 11:59
311  P.M. on _____, _____, provided sale has been closed. Seller agrees to pay at Closing the sum of $ _____ per day
312  to Buyer for use and occupancy from and including the day after Closing to and including the possession date specified above,
313  regardless of whether possession is delivered prior to the possession date. In the event possession is not delivered at Closing, Seller
314  shall deposit in escrow at Closing with Title Company, Listing Company or other escrowee as agreed to by the Parties and escrowee
315  by separate check, the sum of one percent (1%) of the Purchase Price to guarantee that possession of the Real Estate shall be
316  delivered to Buyer on or before the date and time specified in this Contract. If possession is so delivered, the escrow fund shall be
317  paid to Seller. If possession is not so delivered, the designated escrowee shall pay to Buyer from the escrow funds the sum of one fifth (1/5th)
318  of the deposit for each day possession is withheld from Buyer after such specified date and time, and shall pay the balance of the
319  escrow fund, if any, to Seller. In the event that possession is not delivered to Buyer within five (5) calendar days after the date
320  specified herein, Seller shall continue to be liable to Buyer for a sum of money equal to one fifth (1/5th) of the possession escrow sum specified
321  herein for each day possession is so withheld from Buyer, without prejudice to any other rights or remedies available to Buyer. If
322  within ten (10) business days after Date of Acceptance written agreement on a post Closing possession agreement cannot be reached
323  by the Parties, this Contract shall be null and void and earnest money refunded to Buyer upon written direction of the Parties
324  to Escrowee. If written notice is not served within the time specified, this provision shall be deemed waived by the Parties
325  and this Contract shall remain in full force and effect.

326
327  ☐☐☐☐  33. WELL AND/OR SEPTIC/SANITARY INSPECTIONS: Seller shall obtain, at Seller's expense, a well water
328  test (including nitrates test) and/or a septic/sanitary report from the applicable governmental authority or qualified inspection
329  service, each dated not more than ninety (90) days prior to Closing, stating that the well and the water supplied therefrom and the
330  septic/sanitary system are in compliance with applicable health regulations. Seller shall deliver a copy of the report to Buyer not less
331  than fourteen (14) days prior to Closing. If either system is found not to be in compliance with applicable health regulations, and in

Buyer Initial _QB_  Buyer Initial _____  Seller Initial _SIRVA/mb_  Seller Initial _____
Address _2336 N. GREENVIEW, CHICAGO, IL 60614_

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035, (800) 383-9805 www.zipform.com

334 he event that within five (5) business days after receipt of such report(s), written agreement cannot be reached by the Parties with
335 respect to the resolution of well and/or septic/sanitary issues, then either Party may terminate this Contract by written notice to the
336 other Party and this Contract shall be null and void and earnest money refunded to Buyer upon written direction of the
337 Parties to Escrowee.

☐☐☐☐  **34.  CONFIRMATION OF DUAL AGENCY:**  The Parties confirm that they have previously consented to
_____ (Licensee) acting as a Dual Agent in providing brokerage services
on their behalf and specifically consent to Licensee acting as a Dual Agent with regard to the transaction referred to in this Contract.

341 ☐☐☐☐  **35.  "AS IS" CONDITION:** This Contract is for the sale and purchase of the Real Estate and personal property in its
342 "As Is" condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or guarantees with respect to the
343 condition of the Real Estate and personal property have been made by Seller or Seller's Agent other than those known defects, if
344 any, disclosed by Seller. Buyer may conduct an inspection at Buyer's expense. In that event, Seller shall make the property available
345 to Buyer's Inspector at reasonable times. Buyer shall indemnify Seller and hold Seller harmless from and against any loss or damage
346 caused by the acts or negligence of Buyer or any person performing an any inspection(s). In the event the inspection reveals that the
347 condition of the improvements, fixtures or personal property to be conveyed or transferred is unacceptable to Buyer and Buyer so
348 notifies Seller within five (5) business days after the Date of Acceptance, this Contract shall be null and void and earnest money
349 shall be refunded to Buyer upon the written direction of the Parties to Escrowee. Failure of Buyer to notify Seller or to conduct
350 said inspection operates as a waiver of Buyer's right to terminate this Contract under this paragraph and this Contract shall remain in
351 full force and effect. Buyer acknowledges the provisions of Paragraph 11 and the warranty provisions of Paragraph 3 do not apply to
352 this Contract.

354 ☐☐☐☐  **36.  VA OR FHA FINANCING:** If Buyer is seeking VA or FHA financing, this provision shall be applicable: Buyer
355 may terminate this Contract if the Purchase Price set forth herein exceeds the appraised value of the Real Estate, as determined by
356 the Veterans Administration (VA) or the Federal Housing Administration (FHA). However, Buyer shall have the option of
357 proceeding with this Contract without regard to the amount of the appraised valuation. If VA, the Funding Fee, or if FHA, the
358 Mortgage Insurance Premium (MIP) shall be paid by Buyer and [check one] ☐ shall ☐ shall not be added to the mortgage loan
359 amount.  Seller  agrees  to  pay  additional  miscellaneous  expenses  required  by  lender  not  to  exceed  $200.00.
360 **Required FHA or VA amendments shall be attached to this Contract.**
361 It is expressly agreed that notwithstanding any other provisions of this Contract, the Buyer shall not be obligated to complete the
362 purchase of the property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless the
363 Buyer has been given, in accordance with HUD/FHA requirements, a written statement by the Federal Housing Commissioner
364 setting forth the appraised value of the property (excluding Closing costs) of not less than $ _____.
365 Buyer shall have the privilege and option of proceeding with the consummation of the Contract without regard to the amount of the
366 appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and
367 Urban Development will insure/guarantee. HUD and the mortgagee do not warrant the value nor the condition of the property.
368 Buyer should satisfy himself/herself that the price and condition of the property are acceptable.

370 ☐☐☐☐  **37.  INTERIM FINANCING:** This Contract is contingent upon Buyer obtaining a written commitment for interim
371 financing on or before _____ in the amount of $ _____. If Buyer is unable to secure the
372 interim financing commitment and gives written notice to Seller within the time specified, this Contract shall be null and void and
373 earnest money refunded to Buyer upon written direction of the Parties to Escrowee. If written notice is not served within the
374 time specified, this provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect.

376 ☐☐☐☐  **38.  MISCELLANEOUS PROVISIONS:** Buyer's and Seller's obligations are contingent upon the Parties entering
377 into a separate written agreement consistent with the terms and conditions set forth herein, and with such additional terms as either
378 Party may deem necessary, providing for one or more of the following: *(check applicable box(es))*
379 ☐ ASSUMPTION OF SELLER'S MORTGAGE
380 ☐ ARTICLES OF AGREEMENT FOR DEED OR PURCHASE MONEY MORTGAGE
381 ☐ VACANT LAND
382 ☐ NEW CONSTRUCTION

384 ☐☐☐☐  **39.  SPECIFIED PARTY APPROVAL:** This Contract is contingent upon the approval of the Real Estate by
385 _____, Buyer's specified party,
386 within five (5) calendar days after the Date of Acceptance. In the event Buyer's specified party does not approve of the Real Estate
387 and written notice is given to Seller within the time specified, this Contract shall be null and void and earnest money refunded
388 to Buyer upon written direction of the Parties to Escrowee. If written notice is not served within the time specified, this
389 provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect,

Buyer Initial _____  Buyer Initial _____    Seller Initial _S12VA (ml_  Seller Initial _____
Address _2336 N. GREENVIEW CHICAGO, IL 60614_

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035, (800) 383-9805 www.zipform.com

(WED) NOV 23 2005 14:22 ST 14:20 No. 6897878570 P 9

THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL PARTIES AND DELIVERED

392 The Parties represent that text of this form has not been altered and is identical to the official Multi-Board Residential
393 Real Estate Contract 3.0.

394 NOV 3, 2005

395 Date of Offer

396

397 Buyer Signature

398 _Catherine J. Breen_

399 Buyer Signature

400 DONALD J. + CATHERINE J. BREEN

401 Print Buyer(s) Names

402 38 WESLEY LANE

403 Address

404 BURLINGTON    NJ    08016

405 City            State    Zip

406

407 Phone Number(s)

408

409 Email

410 RE/MAX City

411 Selling Office          MLS #    120572

412 PATRICIA REGAN

413 Selling Agent          MLS #

414

415 Email  pregan@remax.net

416 5316 N. Milwaukee Suite D

417 Address

418 CHICAGO    IL    60630

420 City            ST    Zip

421

422 Phone No.        Fax No.

423

424 Buyer's Attorney

425

426 Email

427

428 Address

429

430 Phone No.        Fax No.

431

432 Mortgage Company        Fax No.

DATE OF ACCEPTANCE

11-28-05

Seller Signature

_Mary Bagley_

Seller Signature

SIRVA Relocation

Print Seller(s) Names

SIRVA Relocation

Address  3300 FERNBROOK LN. N., SUITE 300

City  PLYMOUTH, MN 55447-5200

763-252-3816

Phone Number(s)

_mary.bagley@SIRVA.com_

Email

FOR INFORMATION ONLY

KOENIG + STREY

Listing Office          MLS #

RENEE BENNETT

Listing Agent          MLS #

Email  1940 N. CLARK ST.

Address

CHICAGO, IL  60614

City            ST    Zip

Phone No.        Fax No.

Seller's Attorney

Email

Address

Phone No.        Fax No.

Loan Officer        Phone No.

433 ©2003, Illinois Real Estate Lawyers Association. All right reserved. Unauthorized duplication or alteration of this
434 form or any portion thereof is prohibited.
435 Official form available at www.reallaw.org (web site of Illinois Real Estate Lawyers Association).
436 Approved by the following organizations January, 2003.
437 Illinois Real Estate Lawyers Association, Belvidere Board of REALTORS®, Boone County Bar Association, Chicago
438 Association of REALTORS®, Du Page County Bar Association, Kane County Bar Association, Lake County Bar
439 Association, McHenry County Association of REALTORS®, North Shore - Barrington Association of REALTORS®,
440 Northwest Association of REALTORS®, Northwest Suburban Bar Association, Oak Park Board of REALTORS®,
441 REALTOR® Association of the Fox Valley, REALTOR® Association of West/South Suburban Chicagoland, West
442 Towns Board of REALTORS®

443 This offer was presented to Seller by _____ on _____ , ____ at ___ : ___ ☐ AM ☐ PM
444                                         (Agent)              (date)
445

446 This offer is rejected _____
447                     (Seller initials)  (Seller initials)  (date)

DJB    Buyer Initial RB    Buyer Initial    Seller Initial SIRVA/mb Seller Initial

Address  5336 N. GREENVIEW CHGO, IL 60614

Produced with ZipForm™ by RE FormsNet, LLC 18025 Fifteen Mile Road, Clinton Township, Michigan 48035, (800) 383-9805 www.zipform.com

NOV. 27. 2005 10:41PM    SIRVA RELOCATION    NO. 9164    P. 10

03:01:59 p.m.    11-23-2005    2/22

3186788

06 10:04 FAX 1 312 894 6228        K&S LINCOLN PARK        ☒001


**SIRVA** ℠
Relocation

08CV3525
JUDGE MANNING
MAGISTRATE JUDGE KEYS

TC

Transferee ID: 55528
Authorization ID: 300978

## RIDER TO PURCHASE AGREEMENT

This is a Rider to a Purchase Agreement ("Agreement") dated _11-28-05_ between SIRVA Relocation LLC as Seller and _Donald & Catherine Brown_ as Buyer, with respect to the land, buildings, improvements and contents located at

**2336 N. Greenview
Chicago, IL 60614**

("Property"). In the event of any conflict between the provisions of this Rider and the provisions of the Agreement, the provisions of this Rider shall control and the conflicting terms in the Agreement and any other addenda are hereby expressly waived by Buyer and Seller.

### Condition of Premises

Buyer understands the Property has been previously occupied and should not be expected to be in the same condition as a new property. Buyer understands that Seller is a relocation management company and has never lived on or in the Property. The Property, including the contents (fixtures, appliances and personal property) being sold and purchased are not new, and are being sold "as is", in their present condition. Neither Seller or any of its agents make any representations concerning the Property, including but not limited to, representations regarding the size of the buildings and improvements, the presence or absence of toxic or hazardous substances, or the presence or absence of any encroachments or unrecorded easements, except as follows, and these exceptions shall not be considered as conclusive:

_____

_____

### Financing

If Buyer is obtaining new loan or assuming an existing loan, Buyer shall provide to Seller within __0__ (10 days if blank) days of acceptance of contract, a lender letter stating Buyer, based on information provided at formal loan application and after lender's review of Buyer's credit report, is qualified to obtain loan described in this contract. If Buyer owns a home and this contract is not subject to closing of said home, lender letter must state that Buyer is qualified without selling said home. If contract is subject to Buyer's home closing, Buyer shall provide Seller within 10 days of acceptance of this contract a copy of contract on Buyer's home and a lender letter from their Buyer(s) satisfactory to Seller. If Buyer fails to provide said lender letter within specified time then the contract shall be deemed unconditional with regard to any financing contingency. However, Seller shall have the option of cancelling the contract and this addendum by so notifying Buyer within five (5) calendar days after expiration of lender letter delivery date. All earnest money shall be refunded to Buyer.

CONFIDENTIAL: CANNOT BE USED NOR DISSEMINATED, IN WHOLE OR IN PART, WITHOUT WRITTEN CONSENT OF SIRVA RELOCATION LLC. This document was transmitted by and from SIRVA Relocation LLC electronically. It may not be altered or revised in any manner without the express written consent of SIRVA Relocation LLC. Any alterations, additions, deletions or other modifications to the original document shall be void and of no force or effect without the written consent of SIRVA Relocation LLC.
210017

In cases where Buyer is paying cash, Buyer shall, within 10 days of acceptance of this contract, provide Seller with written documentation satisfactory to Seller as evidence of source of liquidity of funds in an amount equal to or greater than purchase price and closing costs. Seller may cancel this contract if the Buyer fails to provide such satisfactory documentation within the 10-day time frame.

**Earnest Money Deposit**

Buyer's deposit or earnest money shall be made payable to SIRVA's listing Broker.

**Disclosures — Tests — Inspections**

Seller herewith provides Buyer with a copy of *Seller's Disclosure Statement* completed by the most recent owner/occupant of the Property from whom Seller acquired the Property. Buyer acknowledges receipt of same by initialing below. Seller makes no representations as to the accuracy or the conclusiveness of this statement. Seller has made no independent investigation of the Property.

Some or all of the following tests or inspections may have been conducted in, on or with respect to the Property. Buyer's initials acknowledge receipt of the documentation specified below in regard to those tests or inspections actually performed.

Please indicate those items provided by Seller with an X

| YES | NO | Disclosures/Tests/Inspections/Disclaimers |
|---|---|---|
| X | | Disclosure Statement completed by owner previous to SIRVA (SIRVA form) |
| | X | Disclosure Statement completed by owner previous to SIRVA (Local form) |
| X | | Disclosure Statement completed by SIRVA (Local form) |
| X | | Notice of Affiliated Business Arrangement |
| X | X | Lead Paint Disclosure (if home built prior to 1978) |
| X | X | Indoor Air Quality Disclaimer |
| X | X | General Home Inspection Report |
| | X | Radon Inspection Report *Order Confirmation Sheet* |
| | X | A Citizen's Guide to Radon" and "Radon Reduction Methods" issued by the United States Environmental Protection Agency |
| X | | Termite/pest Inspection Report |
| | X | Well Inspection Report |
| | X | Water Quality Inspection Report |
| | X | Septic Inspection Report |
| | X | Pool Inspection Report |
| | X | Underground Storage Tank Inspection Report |
| | X | Mold test report |
| X | | Other (identify) *summary of previous flood / sewer issue* |

Buyer's Initials    *DJB*    *CJB*

THE ABOVE DOCUMENTS ARE BEING GIVEN TO BUYER FOR INFORMATIONAL PURPOSES ONLY. THEY REPRESENT THE OPINIONS OF THE INDIVIDUALS OR FIRMS WHO PREPARED THEM. SELLER MAKES NO AGREEMENT TO UNDERTAKE OR PERFORM ANY ACTION RECOMMENDED IN ANY OF THE REPORTS. SELLER MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY SORT WHATSOEVER AS TO THE INFORMATION GIVEN OR REGARDING THE PROPERTY, ITS CONDITION, VALUE OR SURROUNDS AND MAY NOT BE HELD LIABLE OR RESPONSIBLE FOR ANY DAMAGES OR LIABILITY TO BUYER OR ANY OTHER PERSON OR ENTITY. BUYER IS AGREEING TO FULLY RELY ON ITS RIGHT TO INSPECTIONS, TESTS AND SURVEYS GRANTED HEREIN TO DISCOVER ANY UNDESIRABLE OR LATENT CONDITIONS REGARDING THIS PROPERTY, AND ACKNOWLEDGES THAT SELLER HAS MADE NO REPRESENTATIONS THEREON UPON WHICH BUYER MAY RELY. THE PROVISIONS HEREIN SHALL SURVIVE CLOSING AND DELIVERY OF THE DEED. THE CLOSING OF THIS TRANSACTION SHALL

CONFIDENTIAL: CANNOT BE USED NOR DISSEMINATED, IN WHOLE OR IN PART, WITHOUT WRITTEN CONSENT OF SIRVA RELOCATION LLC. This document was transmitted by and from SIRVA Relocation LLC electronically. It may not be altered or revised in any manner without the express written consent of SIRVA Relocation LLC. Any alterations, additions, deletions or other modifications to the original document shall be void and of no force or effect without the written consent of SIRVA Relocation LLC.

210017    *DJB*
*CJB*

CONSTITUTE BUYER'S FULL AND COMPLETE ACCEPTANCE AND RELEASE OF ALL CONDITIONS AND INSPECTION MATTERS HEREIN.

Unless specifically noted under "Disclosures — Tests — Inspections," Seller has no knowledge concerning the presence of radon gas, asbestos or other toxic or hazardous substances in the Property. However, Buyer shall not interpret Seller lack of knowledge as a representation that the Property is free of radon gas, asbestos or other toxic or hazardous substances.

This Agreement is subject to the right of the Buyer to obtain at his own expense, inspection(s) of the premises by consultant(s) of his own choosing, granting to the Buyer such right of inspection(s) on or before an expiration date hereinafter set forth. The Buyer and his consultant(s) shall have the right of access to the premises at reasonable times and in the presence of Seller or its authorized representative upon twenty-four hour advance notice, for the purpose of inspecting the condition of said premises. If Buyer is not satisfied with the results of such inspection(s), this Agreement may be terminated, without legal or equitable recourse to either party, by the Buyer at his election, the parties thereby releasing each other from all liability under this Agreement, and the deposit shall be returned to the Buyer provided, however, that Buyer shall have first notified Seller in writing together with a copy of the written report(s) stating the results of the inspection(s) and the repairs required by Buyer ("Reports") within ten (10) days of the date of the Agreement ("Report Date") and further provided that the parties shall have five (5) days after Seller's receipt of the Reports within which to conduct good faith negotiations and agree, in writing, on any and all inspection and repair issues identified in the Reports ("Expiration Date"). If the Report(s) are not received on or before the Report Date, Buyer shall be bound to perform his obligations under this Agreement. If no Agreement is reached on or before the Expiration Date, then either party may cancel this Agreement.

Buyer acknowledges that he has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in the Agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either Seller or the Broker(s) (if none, state "none". If any listed, indicate by whom the warranty or representation was made):



In accepting this Property in its present condition, Buyer releases and holds Seller harmless from liability as to the condition of the Property as of the closing. The closing of this sale shall constitute acknowledgement that the premises and systems therein and the condition thereof were acceptable at the time the sale was closed.

Buyer agrees to again inspect the Property *not later than five days* prior to the scheduled closing, and must notify Seller within said five day period if the Property is not in the same condition as of the date of the Agreement (except for any repairs made in accordance with the inspection provisions), reasonable wear and tear excepted.

Seller shall make the necessary repairs to place the property in the condition as of contract reasonable wear and tear excepted.  In lieu of making such repairs, or partial repairs, Seller reserves the right to cancel this Agreement, and, upon return of the earnest money, neither party shall have any further liability to the other. If the Buyer has not made an examination of the Property, and submitted a report of any objections, Buyer is deemed to have accepted the condition of the Property as satisfactory and Seller is deemed relieved of any and all liability after the closing of the sale. For the avoidance of doubt, THIS PARAGRAPH DOES NOT PERMIT BUYER TO REQUEST ANY NEW REPAIRS FOR ANY MATTER NOT PREVIOUSLY REQUESTED UNDER THE INSPECTION SECTION EXCEPT TO MAINTAIN THE ORIGINAL CONDITION OF THE PROPERTY.

Buyer hereby releases and forever discharges Seller, Seller's agents, subagents, employees, and any other officer, director or partner, or any one of them, or any other person, firm, or corporation who may be liable by or through them from any and all claims, losses or demands which may arise from any condition whether known or unknown as to said Property.

...DENTIAL: CANNOT BE USED NOR DISSEMINATED, IN WHOLE OR IN PART, WITHOUT WRITTEN CONSENT OF SIRVA RELOCATION LLC. This document was transmitted by and from SIRVA Relocation LLC electronically. It may not be altered or revised in any manner without the express written consent of SIRVA Relocation LLC. Any alterations, additions, deletions or other modifications in the original document shall be void and of no force or effect without the written consent of SIRVA Relocation LLC.

210017

185788

**Tax Prorations**

With regard to prorations or other adjustments for real estate taxes provided for in the Agreement, such prorations or adjustments will be made based on the most recent tax bill available for the Property.  No tax escrow will be established nor will any adjustment be made after closing for any increase or decrease in the amount of real estate taxes subsequent to closing.

**Delayed Closing Penalty**

Buyer agrees to close on date set forth in the Agreement.  In the event Buyer fails to close by said date, for any reason other than loan approval or inability to close, Buyer shall pay to Seller charge of 1.5% of selling price per month, prorated on a per diem basis, for every day Buyer fails to meet closing date. *Changes to 7 DAY grace period.*

**Clear Title Contingency**

The Contract of Sale to which this Rider is a part is contingent upon SIRVA being able to deliver good and marketable title to the property.  The Buyer acknowledges and agrees that the recorded title to the property may be conveyed to Buyer by a person or entity other than Seller.

**Survival of Closing**

Notwithstanding any provision of any other documents entered into with respect to this transaction, no representations, warranties, agreements, or covenants, whether written or oral shall survive the closing of this transaction except those representations, warranties, agreements or covenants contained in this Rider to Purchase Agreement, which shall survive closing in its entirety.

**Final Walk-Thru Inspection**

Buyer shall be permitted a visual inspection the Property no sooner than 72 hours prior to closing to insure that the property is in the proper condition pursuant to this Contract, reasonable wear and tear excepted.

**Fuel Credit**

Buyer agrees to credit SIRVA for remaining fuel, if any, based on a fuel reading by a fuel company.

**Dispute Resolution**

Both parties shall use reasonable good faith efforts to resolve any disputes prior to exercising any termination rights contained in the Contract, Addendum or Riders.

**Other**

1.    Buyer will rely on Buyer's own inquiry with the local sheriff's office or other authority as to registered sex offenders in the area, and will not rely on Seller or any real estate agent involved in the transaction for this information.

2.    Seller may assign this Contract of Sale without the consent of the Buyer.

**Facsimile Signature**

This Rider to Sales Agreement shall be deemed valid and effective by original or facsimile signature.  This Rider to Sales Agreement shall also be valid and effective if signed in Counterparts.

SIRVA Relocation LLC                                      Buyer:

*Mary Bagley*                                            *[signature]*
Mary Bagley                                              *Catherine J Buen*
Inventory Marketing Specialist

11-28-05                                                 23 Nov 05
                                                         Date

CONFIDENTIAL: CANNOT BE USED NOR DISSEMINATED, IN WHOLE OR IN PART, WITHOUT WRITTEN CONSENT OF SIRVA RELOCATION LLC. This document was transmitted by and from SIRVA Relocation LLC electronically. It may not be altered or revised in any manner without the express written consent of SIRVA Relocation LLC. Any alterations, additions, deletions or other modifications to the original document shall be void and of no force or effect without the written consent of SIRVA Relocation LLC.
Page 4 of 4





# Illinois Association of REALTORS®
# RESIDENTIAL REAL PROPERTY DISCLOSURE REPORT

NOTICE: THE PURPOSE OF THIS REPORT IS TO PROVIDE PROSPECTIVE BUYERS WITH INFORMATION ABOUT MATERIAL DEFECTS IN THE RESIDENTIAL REAL PROPERTY. THIS REPORT DOES NOT LIMIT THE PARTIES RIGHT TO CONTRACT FOR THE SALE OF RESIDENTIAL REAL PROPERTY IN "AS IS" CONDITION. UNDER COMMON LAW SELLERS WHO DISCLOSE MATERIAL DEFECTS MAY BE UNDER A CONTINUING OBLIGATION TO ADVISE THE PROSPECTIVE BUYERS ABOUT THE CONDITION OF THE RESIDENTIAL REAL PROPERTY EVEN AFTER THE REPORT IS DELIVERED TO THE PROSPECTIVE BUYER. COMPLETION OF THIS REPORT BY SELLER CREATES LEGAL OBLIGATIONS ON SELLER THEREFORE SELLER MAY WISH TO CONSULT AN ATTORNEY PRIOR TO COMPLETION OF THIS REPORT.

Property Address: ___2336 N. Greenview___

City, State & Zip Code: ___Chicago, IL 60614___

Seller's Name: ___Mark D. Wyckoff___

This report is a disclosure of certain conditions of the residential real property listed above in compliance with the Residential Real Property Disclosure Act. This information is provided as of _____, 19____, and does not reflect any changes made or occurring after that date or information that becomes known to the seller after that date. The disclosures herein shall not be deemed warranties of any kind by the seller or any person representing any party in this transaction.

In this form, "am aware" means to have actual notice or actual knowledge without any specific investigation or inquiry. In this form a "material defect" means a condition that would have a substantial adverse effect on the value of the residential real property or that would significantly impair the health or safety of future occupants of the residential real property unless the seller reasonably believes that the condition has been corrected.

The seller discloses the following information with the knowledge that even though the statements herein are not deemed to be warranties, prospective buyers may choose to rely on this information in deciding whether or not and on what terms to purchase the residential real property.

The seller represents that to the best of his or her actual knowledge, the following statements have been accurately noted as "yes", (correct), "no" (incorrect) or "not applicable" to the property being sold. If the seller indicates that the response to any statement, except number 1, is yes or not applicable, the seller shall provide an explanation, in the additional information area of this form.

| | YES | NO | N/A | |
|---|---|---|---|---|
| 1. | ✓ | | | Seller has occupied the property within the last 12 months. (No explanation is needed.) |
| 2. | | ✓ | | I am aware of flooding or recurring leakage problems in the crawlspace or basement. |
| 3. | | ✓ | | I am aware that the property is located in a flood plain or that I currently have flood hazard insurance on the property. |
| 4. | | ✓ | | I am aware of material defects in the basement or foundation (including cracks and bulges). |
| 5. | | ✓ | | I am aware of leaks or material defects in the roof, ceilings or chimney. |
| 6. | | ✓ | | I am aware of material defects in the walls or floors. |
| 7. | | ✓ | | I am aware of material defects in the electrical system. |
| 8. | | ✓ | | I am aware of material defects in the the plumbing system (includes such things as water heater, sump pump, water treatment system, sprinkler system, and swimming pool). |
| 9. | | | ✓ | I am aware of material defects in the well or well equipment. |
| 10. | | ✓ | | I am aware of unsafe conditions in the drinking water. |
| 11. | | ✓ | | I am aware of material defects in the heating, air conditioning, or ventilating systems. |
| 12. | | ✓ | | I am aware of material defects in the fireplace or woodburning stove. |
| 13. | | ✓ | | I am aware of material defects in the septic, sanitary sewer, or other disposal system. |
| 14. | | ✓ | | I am aware of unsafe concentrations of radon on the premises. |
| 15. | | ✓ | | I am aware of unsafe concentrations of or unsafe conditions relating to asbestos on the premises. |
| 16. | | ✓ | | I am aware of unsafe concentrations of or unsafe conditions relating to lead paint, lead water pipes, lead plumbing pipes or lead in the soil on the premises. |
| 17. | | ✓ | | I am aware of mine subsidence, underground pits, settlement, sliding, upheaval, or other earth stability defects on the premises. |
| 18. | | ✓ | | I am aware of current infestations of termites or other wood boring insects. |
| 19. | | ✓ | | I am aware of a structural defect caused by previous infestations of termites or other wood boring insects. |
| 20. | | ✓ | | I am aware of underground fuel storage tanks on the property. |
| 21. | | ✓ | | I am aware of boundary or lot line disputes. |
| 22. | | ✓ | | I have received notice of violation of local, state or federal laws or regulations relating to this property, which violation has not been corrected. |

*Handwritten in right margin:*
08CV3525
JUDGE MANNING
MAGISTRATE JUDGE KEYS
TC

Note: These disclosures are not intended to cover the common elements of a condominium, but only the actual residential real property including limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

Note: These disclosures are intended to reflect the current condition of the premises and do not include previous problems, if any, that the seller reasonably believes have been corrected.

If any of the above are marked "not applicable" or "yes", please explain here or use additional pages, if necessary:

_____

_____

_____

Check here if additional pages used: _____

Seller certifies that seller has prepared this statement and certifies that the information provided is based on the actual notice or actual knowledge of the seller without any specific investigation or inquiry on the part of the seller. The seller hereby authorizes any person representing any principal in this transaction to provide a copy of this report, and to disclose any information in the report, to any person in connection with any actual or anticipated sale of the property.

Seller: ___Mark W Wyckoff___   Date: ___4-4-2005___

Seller: _____   Date: _____

PROSPECTIVE BUYER IS AWARE THAT THE PARTIES MAY CHOOSE TO NEGOTIATE AN AGREEMENT FOR THE SALE OF THE PROPERTY SUBJECT TO ANY OR ALL MATERIAL DEFECTS DISCLOSED IN THIS REPORT ("AS IS"). THIS DISCLOSURE IS NOT A SUBSTITUTE FOR ANY INSPECTIONS OR WARRANTIES THAT THE PROSPECTIVE BUYER OR SELLER MAY WISH TO OBTAIN OR NEGOTIATE. THE FACT THAT THE SELLER IS NOT AWARE OF A PARTICULAR CONDITION OR PROBLEM IS NO GUARANTEE THAT IT DOES NOT EXIST. PROSPECTIVE BUYER IS AWARE THAT HE MAY REQUEST AN INSPECTION OF THE PREMISES PERFORMED BY A QUALIFIED PROFESSIONAL.

Prospective Buyer: _____   Date: _____   Time: _____

SENATE BILL 828 (PUBLIC ACT 88-111) EFFECTIVE OCTOBER 1, 1994

AN ACT relating to disclosure by the seller of residential real property.

Section 1. Short title. This Act may be cited as the Residential Real Property Disclosure Act.

Section 5. As used in this Act, unless the context otherwise requires the following terms have the meaning given in this section:

"Residential real property" means real property improved with not less than one one nor more than four residential dwelling units; units in residential cooperatives; or, condominium units including the limited common elements allocated to the exclusive use thereof that form an integral part of the condominium unit.

"Seller" means every person or entity who is an owner, beneficiary of a trust, contract purchaser or lessee of a ground lease, who has an interest (legal or equitable) in residential real property. However, "seller" shall not include any person who has both (i) never occupied the residential real property and (ii) never had the management responsibility for the residential real property nor delegated such responsibility for the residential real property to another person or entity.

"Prospective buyer" means any person or entity negotiating or offering to become an owner or lessee of residential real property by means of a transfer for value to which this Act applies.

Section 10. Except as provided in Section 15, this Act applies to any transfer by sale, exchange, installment land sale contract, assignment of beneficial interest, lease with an option to purchase, ground lease or assignment of ground lease of residential real property.

Section 15. The provisions of this Act do not apply to the following:

(1) Transfers pursuant to court order, including, but not limited to, transfers ordered by a probate court in administration of an estate, transfers between spouses resulting from a judgment of dissolution of marriage or legal separation, transfers pursuant to an order of possession, transfers by a trustee in bankruptcy, transfers by eminent domain and transfers resulting from a decree for specific performance.

(2) Transfers from a mortgagor to a mortgagee by deed in lieu of foreclosure or consent judgement, transfer by judicial deed issued pursuant to a foreclosure sale to the successful bidder or the assignee of a certificate of sale, transfer by a collateral assignment of a beneficial interest of a land trust, or a transfer by a mortgagee or a successor in interest to the mortgagee's secured position or a beneficiary under a deed in trust who has acquired the real property by deed in lieu of foreclosure, consent judgement or judicial deed issued pursuant to a foreclosure sale.

(3) Transfers by a fiduciary in the course of the administration of a decedent's estate, guardianship, conservatorship, or trust.

(4) Transfers from one co-owner to one or more other co-owners.

(5) Transfers pursuant to testate or intestate succession.

(6) Transfers made to a spouse, or to a person or persons in the lineal line of consanguinity of one or more of the sellers.

(7) Transfers from an entity that has taken title to residential real property from a seller for the purpose of assisting in the relocation of the seller, so long as the entity makes available to all prospective buyers a copy of the disclosure form furnished to the entity by the seller.

(8) Transfers to or from any governmental entity.

(9) Transfers of newly constructed residential real property that has not been occupied.

Section 20. A seller of residential real property shall complete all applicable items in the disclosure document described in Section 35 of this Act. The seller shall deliver to the prospective buyer the written disclosure statement required by this Act before the signing of a written agreement by the seller and prospective buyer that would, subject to the satisfaction of any negotiated contingencies, require the prospective buyer to accept a transfer of the residential real property.

Section 25. Liability of seller. (a) The seller is not liable for any error, inaccuracy, or omission of any information delivered pursuant to this Act if (i) the seller had no knowledge of the error, inaccuracy, or omission, (ii) the error, inaccuracy, or omission was based on a reasonable belief that a material defect or other matter not disclosed had been corrected, or (iii) the error, inaccuracy, or omission was based on information provided by a public agency or by a licensed engineer, land surveyor, structural pest control operator, or by a contractor about matters within the scope of the contractor's occupation and the seller had no knowledge of the error, inaccuracy or omission.

(b) The seller shall disclose material defects of which the seller has actual knowledge.

(c) The seller is not obligated by this Act to make any specific investigation or inquiry in an effort to complete the disclosure statement.

Section 30. Disclosure supplement. If prior to closing, any seller has actual knowledge of an error, inaccuracy, or omission in any prior disclosure document after delivery of that disclosure document to a prospective buyer, that seller shall supplement the prior disclosure document with a written supplemental disclosure.

Section 35. Disclosure report form. The disclosures required of a seller by this Act, shall be made in the following form: [form on reverse side]

Section 40. Material defect. If a material defect is disclosed in the Residential Real Property Disclosure Report, after acceptance by the prospective buyer of an offer or counter-offer made by a seller or after the execution of an offer made by a prospective buyer that is accepted by the seller for the conveyance of the residential real property, then the Prospective Buyer may, within three business days after receipt of that Report by the prospective buyer, terminate the contract or other agreement without any liability or recourse except for the return to prospective buyer of all earnest money deposits or down payments paid by prospective buyer in the transaction. If a material defect is disclosed in a supplement to this disclosure document, the prospective buyer shall not have a right to terminate unless the material defect results from an error, inaccuracy, or omission of which the seller had actual knowledge at the time the prior disclosure document was completed and signed by the seller. The right to terminate the contract, however, shall no longer exist after the conveyance of the residential real property. For purposes of this Act the termination shall be deemed to be made when written notice of termination is personally delivered to at least one of the sellers identified in the contract or other agreement or when deposited, certified or registered mail, with the United States Postal Service, addressed to one of the sellers at the address indicated in the contract or agreement, or, if there is not an address contained therein, then at address indicated for the residential real property on the Report.

Section 45. This Act is not intended to limit or modify any obligation to disclose created by any other statute or that may exist in common law in order to avoid fraud, misrepresentation, or deceit in the transaction.

Section 50. Delivery of the Residential Real Property Disclosure Report provided by this Act shall be by:

1) personal or facsimile delivery to the prospective buyer;

2) depositing the report with the United States Postal Service, postage prepaid, first class mail, addressed to the prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement, or

3) depositing the report with an alternative delivery service such as Federal Express, UPS, or Airborne, delivery charges prepaid, addressed to the Prospective buyer at the address provided by the prospective buyer or indicated on the contract or other agreement.

For purposes of this Act, delivery to one prospective buyer is deemed delivery to all prospective buyers. Delivery to authorized individual acting on behalf of a prospective buyer constitutes delivery to all prospective buyers. Delivery of the Report is effective upon receipt by the prospective buyer. Receipt may be acknowledged on the Report, in an agreement for the conveyance of the residential real property, or shown in any other verifiable manner.

Section 55. Violations and damages. If the seller fails or refuses to provide the disclosure document prior to the conveyance of the residential real property, the buyer shall have the right to terminate the contract. A person who knowingly violates or fails to perform any duty prescribed by any provision of this Act or who discloses any information on the Residential Real Property Disclosure Report that he knows to be false shall be liable in the amount of actual damages and court costs, and the court may award reasonable attorney fees incurred by the prevailing party.

Section 60. No action for violation of this Act may be commenced later than one year from the earlier of the date of possession, date of occupancy or date of recording of an instrument of conveyance of the residential real property.

Section 65. A copy of this Act, excluding Section 35, must be printed on or as a part of the Residential Real Property Disclosure Report form.

Section 99. This Act takes effect on October 1, 1994.

PUBLIC ACT (88-111), REPRINTED IN ITS ENTIRETY

As amended, effective date 1-1-98



# SELLER'S DISCLOSURE STATEMENT

**Property Address:**
2336 N. Greenview
Chicago, IL 60614

Authorization ID: 300978
Transferee ID: 55528

I/we the undersigned Seller(s) of the property have completed this form to provide full disclosure as to the condition of the property and other items of interest to potential buyers. These statements are accurate to the best of my (our) knowledge and Seller(s) warrant that they have not, and will not, tamper, alter or interfere with any test or inspection conducted regarding the property.

Seller(s) agree to indemnify and hold SIRVA Relocation LLC (SIRVA Relocation) harmless from any claim made against SIRVA Relocation regarding conditions of the property, which are not disclosed to SIRVA Relocation herein.

Date of Purchase: _November 1996_

Year Home Was Built: _1991_ (Note: If prior to 1978, SIRVA Relocation Lead Base Paint Disclosure to be completed and attached)    Length of Occupancy: _____

| MAJOR DAMAGE: | NO | YES |
|---|---|---|
| Has there ever been any material damage to the property or structures from fire, earthquake, floods, landslides or other disaster(s)? If yes, give details. | ✓ | |
| Are you aware of any existence of any wood boring insects/termites in or on the property or any existing damage caused by same? | ✓ | |
| Have you had treatment for such within the past 5 years? | ✓ | |
| **WATER SERVICE:** | | |
| Is the property serviced by municipal water? If not, what is the water supply? | NO | YES ✓ |
| Are there any known current or existing leaks backups or other material problems with the system or water quality? | ✓ | |
| Is there a well on the property? | Date of installation: | ✓ | |
| If yes, is it in working order? | ✓ | |
| If no, has it been sealed? If so, when: | | |
| **SEWER SERVICE:** | | |
| Is the property serviced by municipal sewer? | NO | YES ✓ |
| If not, what is the date of installation of the of the private septic system? _____ Date last pumped: _____ | | |
| List dates and describe any repairs to the system: | | |
| **LOT:** | | |
| Is there an oil/fuel tank on the property? If yes, where is it located? | NO | YES |
| Is the oil/fuel tank in use? | ✓ | |
| Is the oil/fuel tank underground? | | |
| **STRUCTURAL:** | | |
| Have there been any additions, modifications, alterations, repairs or replacements to the property? If yes, were permit obtained? _yes, where required_ | NO | YES ✓ |
| Is the exterior siding synthetic stucco, Exterior Insulating Finish System (EIFS) or hardboard siding? If yes, which type: _Don't know. Sirva has inspection results._ | | ✓ |
| Is there any urea-formaldehyde (UFFI) or asbestos materials present? | ✓ | |
| Are you aware of any mold on the property? If yes, where: | ✓ | |
| In the course of preparing your property for sale, did you clean up any mold or mildew? If yes, name where and the method of remediation: | ✓ | |
| Give details for any question answered yes or any additional problems. | | |

CONFIDENTIAL: CANNOT BE USED NOR DISSEMINATED, IN WHOLE OR IN PART, WITHOUT WRITTEN CONSENT OF SIRVA RELOCATION LLC.. This document was transmitted by and from SIRVA Relocation LLC electronically. It may not be altered or revised in any manner without the express written consent of SIRVA Relocation LLC. Any alterations, additions, deletions or other modifications to the original document shall be void and of no force or effect without the written consent of SIRVA Relocation LLC.

259002

| Have you ever had any problem with: | NO | YES | | NO | YES |
|---|---|---|---|---|---|
| Foundation | ✓ | | Drain tiling | ✓ | |
| Flooding | ✓ | | Cracked floors | | |
| Wet walls | ✓ | | Sewer backup | | ✓ |
| Seepage/dampness | ✓ | | Leakage | ✓ | |
| Gutters/downspouts | ✓ | | | | |

Give details for any question answered yes.

see attached

---

**RADON GAS:**

| | NO | YES |
|---|---|---|
| Has the property been tested for Radon gas? | ✓ | |

If the property was tested for Radon gas, the results of all tests known to Seller(s) are attached. Tests disclose level of Radon on test day(s) only and no representations are made as to the level of Radon at any time prior to or after the test(s), or to the accuracy of the test(s).

**ROOF:**

| | NO | YES |
|---|---|---|
| Are there any known current or existing leaks backups or other material problems with the system or roof quality? | ✓ | |
| Have there ever been any material repairs or replacement made to the roof as the result of any material problems in the past 5 years? | ✓ | |

What is the age of the shingles?   N/A    What is the roofing material? rubber

Give details for any question answered yes or any additional problems.

**MECHANICAL:**

| Are there any known current or existing material problems with any of the following systems: | NO | YES |
|---|---|---|
| Electrical | ✓ | |
| Plumbing | ✓ | |
| Heating | ✓ | |
| Ventilation | ✓ | |
| Air Conditioning | ✓ | |

Give details for any questions answered yes.

---

| Item (Cross off any item that does not apply) | Included In Sale? Yes | No | In Working Condition? Yes | No | Item (Cross off any item that does not apply) | Included In Sale? Yes | No | In Working Condition? Yes | No |
|---|---|---|---|---|---|---|---|---|---|
| Air Conditioner – Central 2 | ✓ | | ✓ | | Hot Water Heater - 2 | ✓ | | ✓ | |
| Other Air Conditioner – # of ___ | | | | | Humidifier | ✓ | | ✓ | |
| Barbecue (built-in) | | | | | | | | | |
| Shed(s) | | | | | Intercom System | | | | |
| Ceiling Fans - # 2 | ✓ | | ✓ | | Microwave (built-in) | | | ✓ | |
| Central Vacuum | | | | | Oven (2) | | | ✓ | |
| Dishwasher | ✓ | | ✓ | | Range (2) | | | ✓ | |
| Dryer | | | ✓ | | Refrigerator (2) | | | ✓ | |
| Electronic Air Purifier | | | ✓ | | Satellite Dish | | | | |
| Swing set | | | | | Sauna | | | | |
| Fireplace – # of 3 | ✓ | | ✓ | | Smoke Detectors | ✓ | | ✓ | |
| Furnace – 2 | ✓ | | ✓ | | Sprinkler System | | | | |
| Garage Door Opener | ✓ | | ✓ | | Sump Pump | ✓ | | ✓ | |
| Garage Door Remotes – | ✓ | | ✓ | | Trash Compactor | | | | |
| | | | | | TV Antenna | | | ✓ | |

CONFIDENTIAL: CANNOT BE USED NOR DISSEMINATED, IN WHOLE OR IN PART, WITHOUT WRITTEN CONSENT OF SIRVA RELOCATION LLC.. This document was transmitted by and from SIRVA Relocation LLC electronically. It may not be altered or revised in any manner without the express written consent of SIRVA Relocation LLC. Any alterations, additions, deletions or other modifications to the original document shall be void and of no force or effect without the written consent of SIRVA Relocation LLC.

250002



| Item (Cross off any item that does not apply) | Included In Sale? Yes | No | In Working Condition? Yes | No | Item (Cross off any item that does not apply) | Included In Sale? Yes | No | In Working Condition? Yes | No |
|---|---|---|---|---|---|---|---|---|---|
| # of ____ | | | | | | | | | |
| Garbage Disposal – 2 | ✓ | | ✓ | | Vent | ✓ | | ✓ | |
| Invisible Fencing | → | | | | Washer (2) | | | ✓ | |
| Heaters (supplemental) | → | | | | Window Screens | ✓ | | ✓ | |
| Hood (Range or Vent) | ✓ | | ✓ | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Security System – 2 | Owned (✓) | | Rented ( ) | | N/A ( ) |
| Water Softener | Owned ( ) | | Rented ( ) | | N/A (✓) |
| Hot Tub | Free Standing ( ) | | Built-in (✓) | | N/A ( ) |
| Pool | Above Ground ( ) | | Below Ground ( ) | | N/A (✓) |
| List pool equipment: | | | | | |

| MISCELLANEOUS: | NO | YES | UNKNOWN |
|---|---|---|---|
| Are there any other material latent defects that would materially affect use of property? | | | ✓ |
| Does the home contain polybutylene plumbing? | | | ✓ |

## DOCUMENTS / REPORTS:

Check the appropriate boxes below and attach copies of any reports or documents, if applicable:

| Attached | N/A | |
|---|---|---|
| | | Building Permits |
| | | Disclosure Statement |
| | | General Inspections |
| | | Homeowner's Association Documents: Conditions, Covenants and Restrictions (CC&R's), Articles, By-Laws, Financial Statements, statements regarding assessments |
| | | Termite/Pest control warranties or maintenance contracts |
| | | Radon Test |
| | | Septic Test |
| | | Mold Test |
| | | Soil Report |
| | | Structural Inspection Report/Engineering Report |
| | | Surveys |
| | | Other: |
| | | Other: |

## SELLER'S STATEMENT

I/we, owner(s) of the above property acknowledge this *Seller's Disclosure Statement* and give permission to SIRVA Relocation Inc. to disclose this information to any party.

Seller: _____   Date: 4-2-2005

Seller: _____   Date: _____

Seller: _____   Date: _____

The undersigned Buyer acknowledges receipt of the foregoing notice.

Signature of Buyer _____   Date: 23 Nov 05

Signature of Buyer _Catherine J Brenn_   Date: 23 Nov 05

CONFIDENTIAL: CANNOT BE USED NOR DISSEMINATED, IN WHOLE OR IN PART, WITHOUT WRITTEN CONSENT OF SIRVA RELOCATION LLC.. This document was transmitted by and from SIRVA Relocation LLC electronically. It may not be altered or revised in any manner without the express written consent of SIRVA Relocation LLC. Any alterations, additions, deletions or other modifications to the original document shall be void and of no force or effect without the written consent of SIRVA Relocation LLC.

250002

In approximately 1993, there was a flood/sewer back-up into the house following heavy rains, causing damage to the bottom several inches of the walls and floor boards, etc. in the lower level. Insurance proceeds covered repairs to the walls, including new dry-wall and paint and new floorboards and refinishing of doors and other woodwork, in addition to replacing the carpeting and lost rent during the rectification. At the same time, a flood control system was installed in the front yard to prevent sewage back-up, and to pump any house drainage around the check-valve (this is in addition to the inside sump pump). Subsequent changes to city code, have allowed the house gutters to be re-routed to the alley, relieving the burden on the house drainage system. In addition, I believe the City of Chicago has made several improvements to the sewer system itself to prevent sewage back-up problems as a result of heavy rains. There have been no similar events since that 1993 (approx) incident.